UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES PELTIER (#155302),

        Plaintiff,

                                Case No.  2:15-CV-13717

v.                              Judge Robert H. Cleland
                                Magistrate Judge Anthony P. Patti

CONSTANCE DERAKHSHANDEH,

        Defendant.

_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S
MARCH 11, 2016 MOTION FOR SUMMARY JUDGMENT (DE 22)**

**I.    RECOMMENDATION**:  The Court should grant Defendant's March 11,

2016 motion for summary judgment (DE 22), as Plaintiff has failed to exhaust his

administrative remedies in accordance with 42 U.S.C. § 1997e(a) as to those

claims against Defendant Derakhshandeh that are contained in Plaintiff's October

15, 2015 complaint (DE 1).

**II.    REPORT:**

    **A.    Background**

Plaintiff Charles Peltier (#155302) is currently incarcerated at the Michigan

Department of Corrections (MDOC) Thumb Correctional Facility (TCF) in Lapeer,

Michigan.[1]  On October 15, 2015, while incarcerated at TCF, Plaintiff filed the instant lawsuit *in pro per* against Defendant Constance Derakhshandeh, who is identified as a TCF Corrections Officer.  (DE 1.)  In his pleading, which he styles as a 42 U.S.C. § 1983 claim, he alleges that Defendant denied him access to the courts by "deliberately def[ing]" the United States Constitution, the Michigan Constitution of 1963, and MDOC Policy Directive (PD) 05.03.116 ("Prisoners' Access to the Courts"), with vague references to Defendant's alleged and seemingly related violations of "due process," "constitutional provisions," "her oath" and "the public and her employer[']s trust," as well as her "abuse of discretion."  (DE 1 at 3-4, 7-9.)  Much of his complaint seems to take issue with a December 30, 2013 Class II / Class III misconduct report written by Defendant for "Insolence / Unauthorized Communication," which he implies to have been retaliatory.  (DE 1 at 4-9, 11.)[2]

The Court entered orders granting Plaintiff's application to proceed without prepaying fees or costs and directing service without prepayment of costs, after which the U.S. Marshals Service made two attempts at service upon Defendant.

---

[1] *See* www.michigan.gov/corrections, "Offender Search."

[2] Plaintiff is also a party to *Peltier v. Heyns, et al.*, Case No. 2:15-cv-13719-GER-DRG (E.D. Mich.) (summarily dismissed on May 3, 2016), and *Peltier v. Valone*, Case No.  2:16-cv-10209-LJM-MKM (E.D. Mich.) (judgment entered March 25, 2016, motion for reconsideration denied April 19, 2016).

(*See* DEs 5, 6, 7, 10, 11, 12, 17.)  Defendant appeared on March 11, 2016.  (DE 21).

### B.    Instant Motion

Judge Cleland has referred this case to me for pretrial matters.  (DE 9.) Currently before the Court is Defendant Derakhshandeh's March 11, 2016 motion for summary judgment in which she contends that:  (1) Plaintiff did not properly exhaust his administrative remedies as to the allegations contained within his complaint; (2) Plaintiff's complaint does not describe the type of injury required for a First Amendment access to courts claim; (3) the issuance of Class II and Class III misconducts are not "adverse actions" for purposes of a First Amendment retaliation claim; and (4) Defendant is entitled to Eleventh Amendment and qualified immunities.  (DE 22 at 4, 9-24.)

On March 28, 2016, Plaintiff filed a response.  After describing the difficulties of conducting legal research at TCF, Plaintiff contends that:  (1) he was not required to exhaust his administrative remedies; (2) he was denied access to the courts; (3) the misconduct ticket constituted an adverse action; and (4) Defendant is not entitled to immunity.  (DE 24 at 1-4.)

### C.    Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.

Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC

v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also

Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . .   [T]here must be evidence

4

2:15-cv-13717-RHC-APP    Doc # 26    Filed 09/16/16    Pg 5 of 14    Pg ID 173

upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

D.   **Discussion**

   1.   **Plaintiff's Complaint attempts to allege First Amendment retaliation and access to courts claims.**

Plaintiff alleges that Defendant denied him access to the courts and precipitated an emotional, physical and economic hardship upon Plaintiff, for which he seeks $1200 in monetary damages ($800 compensatory and $400 punitive) and expungement of the December 30, 2013 Class I and Class III misconduct reports. (DE 1 at 3, 7, 10; *see also* DE 1 at 8, 9.) These general allegations are "filled in" with more specific allegations, such as:

- Defendant wrote Plaintiff a Class II misconduct for "Out of Place," regarding which he was exonerated.

5

- Plaintiff filed a complaint in court against Defendant.

- Defendant wrote Plaintiff a Class II and Class III misconduct for "Insolence" / "Unauthorized Communications."[3]

- Plaintiff withdrew his first complaint and filed the instant complaint.

- Defendant did not adhere to MDOC PD 05.03.116 ("Prisoners' Access to the Courts").

- Defendant could have permitted the MDOC to represent her on the original lawsuit, instead of issuing the second misconduct report.

(*See* DE 1 at 4-9.)

    As Plaintiff points out, the first paragraph of MDOC PD 05.03.116 provides: "Prisoners have a constitutional right of *access to the courts* which may not be arbitrarily impeded.  No *retaliation* may be taken against a prisoner who has filed a lawsuit or is pursuing litigation.  A copy of a lawsuit which a prisoner has filed against the Department or its employees, or information on such a lawsuit, shall not be placed in that prisoner's commitment files."  MDOC PD 05.03.116 ¶ A (emphases added).  Given Plaintiff's heavy reliance upon this policy, and the Supreme Court's direction regarding the interpretation of a *pro se* complaint, *see*

_____

[3] Defendant Derakhshandeh wrote Plaintiff a Class II/Class III misconduct report for an alleged December 30, 2013 instance of insolence/unauthorized communication.  The report was written approximately 2 weeks later, on January 13, 2014, "due to investigation by supervision of [alleged] legal action."  A hearing was scheduled for January 20, 2014; however, the disposition of this ticket is unclear.  (DE 1 at 11.)

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court interprets Plaintiff's claims against Defendant Derakhshandeh as alleging a First Amendment retaliation claim and a violation of his First Amendment right of access to courts. *See*, *i.e.*, *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), *Lewis v. Casey*, 518 U.S. 343 (1996).[4]

## 2.    Exhaustion of administrative remedies requirement

Lawsuits by prisoners are governed by 42 U.S.C. § 1997e.  Among other things, this statute provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) ("Applicability of administrative remedies").

---

[4] In addition, Plaintiff seemingly argues that the nature of Defendant's actions should preclude representation by the State of Michigan's Attorney General's Office.  (DE 1 at 8-9.)  However, "[w]hether defendants are entitled to representation by the Michigan Attorney General is a matter of both state law and the contract between the State and its employees. . . . Absent an independent basis upon which to disqualify the Attorney General applicable to all attorneys, such as a conflict of interest, this Court has no power to prevent the Attorney General from representing defendants and plaintiff has no standing to challenge that representation."  *Harrison v. Burt*, No. 2:07-CV-11412, 2008 WL 4104105, at *1 (E.D. Mich. Aug. 28, 2008) (Komives, M.J.).  *See also Williams v. Birkett*, No. 14-12755, 2015 WL 2237014, at *3 (E.D. Mich. May 12, 2015) (Majzoub, M.J.), *Rouse v. Caruso*, No. 06-CV-10961-DT, 2007 WL 209919, at *1 (E.D. Mich. Jan. 24, 2007) (Komives, M.J.), *aff'd*, 2007 WL 909578 (E.D. Mich. Mar. 23, 2007).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Moreover, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  Thus, Plaintiff was required to properly exhaust his claims against Defendant Derakhshandeh by complying with the MDOC's Policy Directive 03.02.130, which concerns prisoner/parolee grievances.

However, "[a] PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies." *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).  Stated otherwise, "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

        **3.**      **Plaintiff has not exhausted his administrative remedies as to his claims against Defendant, and he is required to do so for his First Amendment retaliation and access to courts claims.**

### a.    The TCF grievances that Plaintiff pursued through Step III do not appear to concern his claims at bar against Defendant.

Defendant contends that Plaintiff has not properly exhausted the claims within his complaint against Defendant Derakhshandeh, because "he did not properly complete the grievance process regarding those issues . . . ." (DE 22 at 13-15.) Plaintiff responds by arguing that he was <u>not required</u> to exhaust his administrative remedies by way of the MDOC's grievance procedure (*see* DE 24 at 2), yet his MDOC Prisoner Step III Grievance Report does indicate that he did initiate and pursue four grievances to Step III, at various times, while incarcerated at TCF (DE 22-3 at 3-7). In an abundance of caution, the Court has reviewed each of these, and none appears to concern Plaintiff's claims against Defendant which are the subject of this lawsuit.[5]

### b.    Under 42 U.S.C. § 1997e(a), Plaintiff must exhaust First Amendment retaliation and access to courts claims in accordance with MDOC PD 03.02.130.

To be sure, Plaintiff does not seem to challenge Defendant's argument that Plaintiff did not engage in the MDOC's grievance process with respect to the

---

[5] These include TCF-13-10-1933-12i (DE 22-3 at 31-38), TCF-14-08-2435-02e (DE 22-3 at 23-28), TCF-15-02-0111-07f (DE 22-3 at 16-21), and TCF-15-04-0213-01g (DE 22-3 at 9-14). These grievances address different subject matter than the case at bar. The record also contains evidence of an August 29, 2013 Step II grievance response in TCF-13-08-018170-28B, apparently concerning Classification Director Jeff Vansickle filling the Legal Writer position. (DE 22-3 at 29.)

claims at bar.  Instead, he responds that he was <u>not required</u> to exhaust these claims, presumably because (a) the issue is non-grievable under MDOC PD 03.02.130 ("Prisoner/Parolee Grievances") and (b) he engaged in an appellate process – perhaps in accordance with MDOC PD 03.03.105 ("Prisoner Discipline") - which seemingly rendered a December 28, 2014 decision.  (DE 24 at 2.)[6]

However, these arguments lack merit.  First, Plaintiff's claims here – that Defendant Derakhshandeh violated Plaintiff's First Amendment rights of access to courts and his First Amendment right against retaliation – are distinct from the issues which MDOC PD 03.02.130 describes as non-grievable:

> Two or more prisoners and/or parolees may not jointly file a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest. Such grievances shall be rejected by the grievance coordinator. *Grievances that raise the following non-grievable issues also shall be rejected*:
>
> 1.    A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as

_____

[6] According to Plaintiff, the decision stated:  "The hearing was conducted pursuant to Department policy and procedure and the prisoner's due process rights were not violated.  The evidence provided[] strong[ly] supports the charge filed.  This appeal is disapproved."  (DE 24 at 2.)  The Court can only assume that this decision concerned Plaintiff's appeal in the wake of a disposition on his December 30, 2013 misconduct report.  Neither the disposition of the hearing scheduled for January 20, 2014 nor the disposition of any appeal therefrom are clear from the record in this case.

provided in PD 04.01.150 "Prisoner Housing Unit
Representatives/Warden's Forum".

2.    *Decisions made in hearings* conducted by hearing officers of
      the State Office of Administrative Hearings and Rules,
      including property disposition, and *issues directly related to the
      hearing process* (e.g., sufficiency of witness statements;
      timeliness of misconduct review; timeliness of hearing).

3.    Decisions made by the Parole Board to grant, deny, rescind,
      amend or revoke parole, or not to proceed with a lifer interview
      or a public hearing.

4.    *Decisions made in minor misconduct hearings*, including
      property disposition.

5.    Issues not within the authority of the Department to resolve.
      The grievant shall be told who to contact in order to attempt to
      resolve the issue, if known.

MDOC PD 03.02.130 ¶ F (emphasis added).  Here, Plaintiff's claims *against

Defendant Derakhshandeh* generally allege that she issued the December 30, 2013

misconduct report (a) in retaliation for bringing a lawsuit against her and/or (b) to

impede his access to the courts.  These claims are distinct from those *challenging

the decision of the hearing officer*, who presumably determined that Plaintiff was

guilty of the December 30, 2013 misconduct charge for insolence / unauthorized

communication.

Second, engaging in the Class II and Class III misconduct appeals procedure

set forth in MDOC PD 03.03.105 ("Prisoner Discipline") ¶¶ UUU-XXX, is distinct

from the Step II and Step III grievance appeal process set forth in MDOC PD

03.02.130 ("Prisoner/Parolee Grievances") ¶¶ BB-EE, FF-GG.  In the former, *an appeal of the facility hearing officer's decision* is made to the Deputy Warden or to "appropriate supervisory level staff as determined by the Warden[,]" and, ultimately, "[t]he Warden may reverse a hearing officer's decision, and may order a rehearing, on his or her own initiative for any of the reasons set forth in Paragraph WWW."  MDOC PD 03.03.105 ¶¶ UUU, VVV, XXX.  In the latter, a prisoner "seek[s] redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement[,]" as to "grievable issues," beginning with an attempt at resolution and the filing of a Step I grievance form.  *See* MDOC PD 03.02.130, "Policy Statement," & ¶¶ B, P, V.  This process culminates at Step III, where grievance appeals are to be "processed by the Grievance and Appeals Section of the Office of Legal Affairs in Operations Support Administration." MDOC PD 03.02.130 ¶ N.  Thus, the misconduct appeal procedure and the grievance procedure concern different subjects and terminate in different places.

In the end, Plaintiff is required to exhaust his administrative remedies in accordance with the prison's grievance procedure as to his First Amendment retaliation and access to courts claims against Defendant Derakhshandeh.  *Hutton v. Wilkinson*, 34 F. App'x 463, 465 (6th Cir. 2002) ("Hutton did not meet his burden of demonstrating that he had exhausted his administrative remedies as to his First Amendment retaliation claim based on the December 17, 1998, cell

inspection."), _Baker v. Schwarzenegger_, No. CIV. 07-1773, 2008 WL 5068937, at
*4 (S.D. Cal. Nov. 26, 2008) ("Defendants have not adequately met their burden to
show that Plaintiff did not exhaust his administrative remedies with regard to his
property or access to courts claim pursuant to 42 U.S.C. § 1997e(a).").  Not having
done so, the Court should dispose of such claims without considering them on the
merits.

### 4.   Conclusion

As illustrated above, Plaintiff has not exhausted his administrative remedies
as to his claims against Defendant in the instant complaint, and he is required to do
so for his First Amendment retaliation and access to courts claims against her.  If
the Court agrees with this recommendation, then it need not address the merits of
such claims or Defendant's related arguments regarding same (DE 22 at 4, 15-24)
and should grant Defendant's motion for summary judgment (DE 22).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to
file specific objections constitutes a waiver of any further right of appeal. _Thomas
v. Arn_, 474 U.S. 140 (1985); _Howard v. Sec'y of Health & Human Servs._, 932 F.2d
505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: September 16, 2016          s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 16, 2016, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti

14